Morris E. Spector, J.
Two actions are being tried jointly. One action is by Herman Schmith against Henry Fornander and Alfred Ekelman, seeking a declaratory judgment that a stockholders’ agreement entered into between the parties on June 1, 1948 is null and void on the ground of “ frustration ”. The other action is by Henry Fornander against Rose Schmith and Abraham I. Schmith, executrix and executor, respectively, under the last will and testament of Herman Schmith, deceased, for specific performance. Various motions for dismissal of the actions were made in Special Term, and the Justice presiding denied them with leave to renew before the Trial Justice.
The Schmith action was commenced on January 21, .1959. Herman Schmith died April 11,1959. At the time of the institution of this action, and indeed for some time prior to April 28, 1958, the said Schmith was mentally incapable of under *341 standing the nature of his acts. His own son, the executor, who is a physician, testified that by April 28, 1958, his father was in a “ state of incomprehension ’ ’. He was then about 80 years of age. His attorney, Alfred Ekelman, stated that at the meeting on said date Schmith was “ non-compos ” and a “pathetic sight”. While never having been legally declared incompetent or ever having a committee appointed to manage his affairs, there was no doubt of his senility and lack of comprehension. How could he institute this action, and by what authority could his counsel proceed?
Assuming, arguendo, that the action is properly brought, what are the merits? On June 1, 1948, a stockholders’ agreement was entered into alleging that Schmith is the owner of 21 shares and Fornander the owner of 19 shares of stock in the Dayton Pressed Steel Corporation, wherein, among other things, the parties placed restrictions upon the right to dispose of their holdings and further provided that upon the death of any stockholder “ the surviving stockholder shall purchase, and the estate of the decedent shall sell, all of the decedent’s ” stock at a price and upon terms and conditions set forth. The purchase price “ shall be the value of such shares as shown by the balance sheet of the corporation for the period ending with the first day of the month immediately preceding the date of the first offer.” (“ First offer” is defined in paragraph 2 of said agreement, which refers to offer of sale by a retiring stockholder.) The “value” of the stock is to be determined by the regular accountant employed by the corporation, who shall determine value according to subdivisions of paragraph 4, A, B, C, D and F. Section 12C of said agreement states the terms of payment for said stock (within 30 days after qualification of a legal representative of such estate). Section 13 of said agreement contains the nub of plaintiff’s case. It provides in subdivision A that a continuity of management is desirable. Subdivision B appoints officers. Subdivision C' provides that as directors the parties will elect each other as officers. Subdivision D provides that a breach or attempted breach of the covenants in this paragraph will result in irreparable damage, which damage is not measurable in money, so the parties agree to injunctive relief to compel compliance.
At the same time, a voting trust agreement was executed, wherein the parties agreed to equalize the salaries as well as the profits. This voting trust was declared null and void on July 8, 1953. Said voting trust was to run for only 10 years in any event, which would terminate it on May 31,1958,
*342 In Ms petition, plaintiff says that since May, 1958 he had been and still was mentally ill, of unsound mind and incompetent to manage his person or property.
The defendant Fornander refused to sign checks for any salaries to the plaintiff from May 31, 1958, upon the advice of counsel, since plaintiff was unable to perform the limited functions assigned to him, namely, cosign checks as treasurer and give advice. Fornander actually ran the entire business from June 1,1948.
Defendant Fornander brought an article 78 proceeding in August, 1958 to have Schmith removed as treasurer, since he was incapable of performing his duties. This action is still pending. It is alleged that Fornander thus breached his agreement, for which Schmith could have injunctive relief, if Fornander was in the wrong. Plaintiff seeks a declaratory judgment setting aside said agreement as null and void because of “frustration” in that plaintiff is physically and mentally incapable of performing his end of the contract, and that no provision was made for such an event.
This contract cannot be set aside merely because one of its provisions cannot be complied with. The actions of Fornander cannot be considered a breach of paragraph 13 of said contract. Schmith was incapable of serving in his official capacity, and Fornander was compelled to seek relief in equity to preserve and continue the corporation. While the court will not attempt to rewrite the contract, it is evident that the protective restrictions in said section were for Schmith’s benefit and not for the benefit of the corporation. This was a closed corporation, with only two stockholders, each having built-in powers of survival. Schmith did nothing for the corporation except that he advanced the initial capital and acted as treasurer. Fornander was the lifeblood and operating genius of the corporation, but unless there was a treasurer with at least the physical capacity to sign checks, the corporation could not function. As for eliminating Schmith’s salary, Fornander did this on the advice of counsel — Schmith’s counsel — who also acted as secretary. He refused to be responsible for permitting the payment of salary to one who performed no duties for the corporation. The corporate laws of this State do not allow such payments as corporate expenses, and the Federal tax laws do not permit it either. This drawing of equal salary was pursuant to a voting trust agreement which had ceased to exist for years prior to May 31,1958.
The cases cited by Schmith’s counsel, to the effect that ultra vires acts of small, closely-held corporations will be counten *343 anced, does not offer a sufficient basis for compelling Fornander to cause the corporation to act ultra vires. Furthermore, some of the cases cited involve consent by all the shareholders to the ultra vires act.
Judgment is to be entered in accordance with the foregoing.
As for the Fornander action for specific performance, I find that on July 27, 1959 a copy of the financial statement was presented to the executor of the estate of Herman Schmith, and on August 6, 1959 Fornander went to the office of the executor and tendered him a certified check, plus two notes, in conformity with the formula spelled out in the stockholders’ agreement of June 1, 1948, with the possible omission of some slight amount, for which Fornander cannot be held at fault. This tender was made within 30 days after the appointment of a legal representative of the deceased. In fact there was equal obligation on the part of the estate to offer to sell said stock to Fornander, which the estate never did. Instead, the Schmiths refused to part with their stock. The Schmiths never objected to the amount of the tender, and, although they had the balance sheet which was prepared for this purpose, they never objected to the figures therein, nor did they object to the form of the tender (certified check, not cash). They made it clear that no tender, no matter how correct, would be accepted by them. There is no merit to the objection that the balance sheet should have been delivered by registered mail, in view of the concession that it was in fact delivered on July 27, 1958. Indeed, the agreement merely required delivery. “ There was no objection to the tender at the time it was made, either as to form or amount, and all objections which might have been taken Tipon either ground were therefore waived, and the tender must be held to have been sufficient in amount and in proper form. ’ ’ (Mitchell v. Vermont Copper Mining Co., 67 N. Y. 280, 282.) Nor was the tender required to be kept open, in view of its unequivocal rejection without cause. (Myers v. Associates Discount Corp., 60 N. Y. S. 2d 691, 694.) The slight variance in price was due to the fact that the accountant, who under the agreement was to determine the value, stated that Schmith owned 51% of the stock and Fornander 49%. In fact, Schmith owned 21 shares and Fornander 19 shares of issued stock, out of 50 authorized shares (leaving 10 shares unissued). It is now claimed that the 21 siiares constitute 52%% of this issued stock. This error was never brought to Fornander’s attention, and he simply complied with the directive of the corporation’s accountant, as required by the stockholders’ agreement.
*344 The cases cited by counsel for the Schmiths are inapposite, inasmuch as the errors in the amount of the tender were due to the fault of the person making the tender, and not, as here, due to the error of the person mutually agreed upon to compute the value of the stock.
I direct that Fornander tender to the estate of Schmith 52%% of the net value of the corporation as of March 31, 1958, as mentioned in Exhibit 0, in the manner provided in said .agreement, and that said executor and executrix of the estate accept such tender and deliver over to Fornander 21 shares of said corporate stock, with proper transfer tax stamps attached thereto, together with resignations as officers of the corportion of any of the executors or nominees.