OPINION OF THE COURT
Bernard Fuchs, J.
This action is for specific performance of an agreement to sell real estate. The court’s findings of fact after trial follow.
On or about September 1, 1983, defendant agreed in writing to sell an improved parcel of real estate on Second Avenue to Joseph and Mordechai Friedman. The price was $230,000 payable $7,000 upon execution of the agreement, $18,000 at closing by certified check drawn to defendant’s order, $68,182.95 by taking subject to a first mortgage and $136,817.05 by a purchase-money note and mortgage payable to defendant. Title was to close October 11, 1983.
After some agreed adjournments of closing and in response to a letter from the Friedmans’ counsel in December 1983 requesting a further adjournment, defendant’s counsel, by a letter dated January 31, 1984, responded that "the closing must be held no later than March 1, 1984.” He requested a phone call to schedule the specific time and date.
*757 By an instrument dated February 22, 1984, the Friedmans assigned the agreement to plaintiffs. An executed copy of the assignment was delivered to defendant’s counsel on February 23, 1984 with a letter from plaintiffs’ counsel.
The last mentioned letter stated plaintiffs’ readiness to close by March 1, 1984 and requested a specific date and time. It also told defendant’s counsel that if he did not respond and could not be reached by phone, plaintiffs would appear at his office on March 1, 1984 at 3:30 p.m. ready to close. Defendant’s counsel responded neither to the letter nor to telephone calls from plaintiffs’ counsel.
On March 1, 1984, before 3:30 p.m., plaintiffs presented themselves at the office of defendant’s counsel to close. In their possession was a certified $18,000 check drawn by plaintiffs to their own order. After some deláy, defendant’s attorney informed plaintiffs’ counsel, "We’re not selling to your people.” The next day plaintiffs brought this action.
The first mortgage of $68,182.95 was in default prior to September 1, 1983, the date of the sale agreement. While foreclosure was in progress and about January or early February 1984, defendant paid off that mortgage. After the aborted March 1, 1984 closing, defendant agreed with plaintiffs to close at the end of May 1984 with an increased purchase-money mortgage substituted for the extinguished first mortgage. That closing was attempted on May 29, 1984 but was not concluded.
On August 17, 1984 defendant’s counsel wrote to plaintiffs’ counsel by certified mail delivered August 20, 1984. The letter recited several unsuccessful efforts to fix a closing date including the addressee’s failure to telephone, as agreed, on August 17, 1984 to set a date. The letter then stated, "I am fixing Tuesday, August 28, 1984, at 2:00 p.m. at this office as the outside date of closing with time being of the essence.” Plaintiffs did not appear on that date and defendant’s counsel received no answer to his August 17, 1984 letter.
Thereafter, plaintiffs’ counsel informed defendant’s counsel that plaintiffs still wanted to close but disputed his right unilaterally to set a closing date on 11 days’ notice after plaintiffs had previously been ready. Plaintiffs’ counsel added that because the deal was not closed plaintiffs had had to lease space to do business and, on account of expenditures made for that purpose, would not be in funds until October 2, 1984.
*758 Before February 23, 1984 when plaintiffs’ counsel, Arthur Susnow, informed defendant’s counsel of the assignment, Mr. Susnow had presented possible substitute buyers to defendant. Among those were plaintiffs who failed, however, to agree with defendant on a form of contract. Thereafter defendant agreed with another buyer to sell the property, conditional upon termination of the Friedman agreement. Any prospect of satisfying that condition ended with the assignment to plaintiffs.
Defendant pleads four affirmative defenses, the fourth of which is also a counterclaim. The first is lack of privity. No provision of the agreement, however, makes it nonassignable and the assignment itself meets all requirements of the agreement.
A duplicate original assignment is required by the agreement to be delivered to seller’s counsel five days before the closing date. Plaintiffs’ counsel made the delivery on February 23, 1984. Many months have passed since then without a closing and the delivery is timely. The agreement plainly was not intended (as defendant argues) to limit assignment to a period five or more days before October 11, 1983 (the original closing date) unless the transaction closed that day. The agreement, moreover, does not specify that an assignment in breach of the delivery condition is void. A breach would, therefore, not impair the validity of the assignment (Beige v Aetna Cas. & Sur. Co., 39 AD2d 295 [4th Dept 1972]).
As a second affirmative defense defendant contends that specific performance would be inequitable because defendant, having paid off the first mortgage, would experience "undue hardship” from such relief. Defendant would, in effect, be financing the transaction with an additional $68,182.95 of its own funds. The argument is that delays in closing by plaintiffs or their assignors deprived defendant of the funds necessary to make mortgage payments and of the relief from those payments which would ensue from a closing.
The mortgage was not paid off, however, until January or early February 1984. Adjournments of the closing before that were consented to by defendant. Even when the Friedmans’ counsel requested a further adjournment in December 1983, defendant’s counsel, as late as January 31, 1984, agreed to close on March 1, 1984. Defendant agreed to those delays, moreover, with full knowledge of its own deliberate mortgage defaults (which antedated the agreement) and apparently (as to the Jan. 31, 1984 adjournment) of the foreclosure proceed *759 ings. Defendant is therefore fully responsible for the delays in closing.
Defendant’s third affirmative defense is that plaintiffs failed to keep good the tender they made or were ready to make on March 1, 1984. The fourth affirmative defense and counterclaim alleges several tenders of a deed by defendant which plaintiffs failed to accept in breach of the agreement and therefore demands retention of the down payment.
On March 1, 1984 plaintiffs presented themselves on the date designated by defendant, at the place specified in the agreement, ready to close. The $18,000 certified check in plaintiffs’ possession was not, to be sure, drawn to defendant’s order but plaintiffs stood ready to indorse it in that form. If defendant had objected to closing with such a check, a substitute in the form required could have been obtained and tendered in short order. But no such objection was made and it was, therefore, waived (Schmith v Fornander, 26 Misc 2d 339, 13 AD2d 478, lv denied 13 AD2d 746 [1st Dept 1961]).
Defendant had no intention of closing with any check for it willfully defaulted by expressly refusing to sell "to your people.” At that point plaintiffs were fully entitled to specific performance. If this action had gone to judgment the following day, plaintiffs would necessarily have prevailed (Stone v Lord, 80 NY 60 [1880]; Baumann v Pinckney, 118 NY 604 [1890]).
The next attempt at closing occurred on May 29, 1984 after defendant agreed to substitute an increased purchase-money mortgage for the extinguished first mortgage. The reason for failure of that closing is not clear but there is no evidence that plaintiffs were at fault. That attempt to close cannot, therefore, affect plaintiffs’ rights arising from defendant’s willful default. Negotiations and compromise agreements to settle a pending action, moreover (which a May 29, 1984 closing would have accomplished) are not evidence of a party’s liability (Bigelow-Sanford, Inc. v Specialized Commercial Floors, 77 AD2d 464, 465-466 [4th Dept 1980]; Johnson v Tyler, 275 App Div 726 [3d Dept 1949], rearg denied 275 App Div 865).
Defendant argues that it was free to make time of the essence (as were plaintiffs) after the originally specified closing date. A notice aiming to effect such a change, however, must fix a reasonable time for performance (Schmidt v Reed, 132 NY 108, 113 [1892]; Bailen v Potter, 251 NY 224 [1929]; Rasch, Real Property Law and Practice § 949).
*760 Defendant’s August 17, 1984 letter fixing August 28, 1984 as the date for a time of the essence closing left 11 days for plaintiffs to get ready. And the letter was not delivered until August 20, 1984, reducing the time to an unreasonable eight days. Accordingly, even if plaintiffs were required, as defendant argues, to keep the tender good as a condition of defendant’s duty to convey, they would not have been bound by the August 28, 1984 closing date.
Plaintiffs’ right to specific performance is not, however, subject to such a condition, especially when, as in this case, defendant has once repudiated the contract (Schmith v Fornander, supra; Myers v Associates Discount Corp., 60 NYS2d 691, 694 [Broome County Ct 1946]). Still less are plaintiffs required to keep the tender good when, as here, plaintiffs had to use part of the purchase money to acquire space for the conduct of their business because of defendant’s willful refusal to perform (see, Fleming v O'Donohue, 306 Ill 595, 138 NE 183 [1923]; 81 CJ, Specific Performance, § 115).
Defendant’s final argument is that plaintiffs have not come to court with clean hands because they took an assignment of the Friedmans’ agreement after the latter had orally agreed with defendant to cancel it. There is no suggestion that plaintiffs in any way interfered with a contractual or indeed any right of defendant. Plaintiffs had an unqualified legal right to acquire the Friedmans’ interest in the agreement. Defendant’s disappointment at its failed attempt to sell to another buyer by obtaining a termination of the Friedmans’ rights cannot make plaintiffs’ acquisition of those rights tortious, unconscionable or inequitable. There has been no failure by plaintiffs to do the equity they seek.
Judgment of specific performance for plaintiffs. Judgment for plaintiffs on the counterclaim.